| 53 | 289 |
| 97 | 441 |

| 53 | 289 |
| 126 | 221 |

</div>

[No. 6140.]

## LEO MAURER AND SIXTY-FIVE OTHERS *v.* WILLIAM MITCHELL, TAX COLLECTOR OF THE CITY AND COUNTY OF SAN FRANCISCO.

PROHIBITION—OFFICE OF THE WRIT.—The writ of prohibition mentioned in the Constitution is the writ of prohibition as known to the common law, and its office is to restrain subordinate Courts and inferior *judicial tribunals* from exceeding their jurisdiction.—[REPORTER.]

SAME—COUNTERPART OF MANDAMUS.—The word "counterpart," as employed in sec. 1102 of the Code of Civil Procedure, is designed to illustrate the operation of the writ of prohibition when issued in a proper case, but it is not intended to enlarge or add to the class of cases in which it may be resorted to.—[REPORTER.]

This was an original application to the Supreme Court for a writ of prohibition to prevent proceedings by the respondent as Tax Collector in selling property assessed under the Act of March 23rd, 1876, "An Act to authorize the widening of Dupont Street, in the City and County of San Francisco." The Board of Commissioners provided for in the Act had reported the benefits to adjacent property which would result from the widening of the street at seven hundred and ninety-seven thousand eight hundred and thirty-seven dollars, and the damage from the same cause at nine hundred and fourteen thousand nine hundred and forty-one dollars. The report was duly confirmed. The Board issued bonds in the sum of one million dollars, and levied an assessment of thirteen per cent. of the estimated benefits to pay the interest on the bonds and

create a sinking fund for the payment of the principal as required by the Act. This assessment having become due, and being unpaid, was advertised by the Tax Collector as delinquent, and June 29th, 1878, was fixed as the day of sale. This petition was filed June 28th, 1878, and an alternative writ was issued. On the return day the respondent moved to dismiss the writ, on the ground that it had been improperly issued.

[The case of *Glover* v. *Mitchell*, No. 6145, was a similar application by property owners upon New Montgomery Avenue. It was submitted at the same time and by the same counsel, except that J. P. Hoge and J. M. Taylor were of counsel for petitioners in *Glover* v. *Mitchell*.—REPORTER.]

*McAllisters & Bergin*, for the motion, argued that the writ of prohibition authorized by the Constitution and the Code is the same as the common-law writ of prohibition, and that its operation is confined to cases where *judicial tribunals* are about to exceed their jurisdiction. It has no application to executive acts, such as the sale of property for a delinquent assessment. All the cases in which it has been granted are cases where judicial action was sought to be restrained. (Vide *U. S.* v. *Hoffman*, 4 Wall. 163.)

*Garber & Thornton, Sharp & Sharp, Bishop & Fifield,* and *T. H. Hittell,* for Petitioners and against the motion.

The Constitution does not attempt to enumerate or define the classes of cases in which the writ of prohibition shall issue. It gives this Court jurisdiction of the writ, and leaves it to the Legislature to say when and how the remedy shall be applied, and since the Legislature has by the statute expressly defined the writ, named the cases in which it shall issue, and provided how the remedy shall be applied, we must look to the statute for our guide upon the subject. (Cooley Const. Lim. 4th ed., 350; Id. 351.) In *People* v. *Sups. of Kern County,* 47 Cal. 81, and in *Covarrubias* v. *Board of Sups. of Santa Barbara County,* 52 Cal. 622, this Court allowed the writ against the Board of Supervisors not exercising judicial functions.

Nor is it true that the writ was at common law issued exclu-
sively to restrain judicial proceedings. "So prohibition lies· to
restrain a nuisance." (Sanb. Skin, 625, 626.) Comyn's Dig.
title Prohibition, A 3, 139: "So a prohibition goes to prevent
damages to any ecclesiastical possession; as if any one does
waste in the house of a parson, (Mo. R. 917, 1 Rol. 86, 167)
or cuts down trees growing upon his lands, (Mo. R. 117, 1 Rol.
335): * * * * So if the vicar cuts down a tree in the
church-yard." (2 Rol. 111; Comyn's Dig. title Prohibition,
F. 16, 151.)

Nor in our American States has it been so confined exclu-
sively. (*Herriman* v. *County Commissioners*, 53 Me. 83;
*Clark* v. *Rosenda*, 5 Robinson La. 27; *Day* v. *Board of Alder-
men of the City of Springfield*, 102 Mass. 310; *Donavan* v. *The
Mayor and Council of Vicksburg*, 29 Miss. 248; *Burger, Tax
Collector* v. *Carter*, 1 McMullen, S. C. R. 418.)

By the Code of Civil Procedure, sec. 1102, the writ is made
the "counterpart" of the writ of mandate, and by the next
sec. (1103) it is distinctly provided "it may be issued by any
Court, except Police or Justices' Courts, to an inferior tribunal
or to a corporation, board, or person, in all cases where there is
not a plain, speedy, and adequate remedy in the ordinary course
of law."

By the COURT:

At the common law the writ of prohibition was issued on
the suggestion that the cause originally, or some collateral mat-
ter arising therein, did not belong to the inferior jurisdiction,
but to the cognizance of some other Court. It was an original
remedial writ, provided as a remedy for encroachment of juris-
diction. Its office was to restrain subordinate Courts and inferior
*judicial tribunals* from exceeding their jurisdiction. (*The
Spring Valley Water Works* v. *The City and County of San
Francisco*, 52 Cal. 111.)

By the fourth section of the sixth article of the Constitution
of the State the Supreme Court has power to issue writs of
prohibition. We are all of opinion that the writ mentioned in

the Constitution is the writ of prohibition as known to the common law.

Nor does the language of sec. 1102 of the Code of Civil Procedure require of us to hold that the office of the writ has been extended, or that it should now issue in cases in which it could not have been resorted to prior to the statute. The full text of that section is as follows: "The writ of prohibition is the counterpart of the writ of mandamus. It arrests the proceedings of any tribunal, corporation, board, or person, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person."

Giving the words of the last clause of the section their natural construction in view of the law when the section was adopted, there would be no difficulty in holding that the "corporation, board, or person" mentioned, was a corporation, board, or person clothed with limited *judicial* powers which had been exceeded. The word "jurisdiction," when used in connection with "prohibition," would be at once understood as being employed in the sense of the legal power or authority "to hear and determine causes." It is said, however, that the first clause of the section can only be given effect by extending prohibition so as to arrest every unauthorized act of an officer or person clothed with authority, as mandamus may be employed to compel the performance of any act enjoined by law, with the condition in each case that the party has no other plain, speedy and adequate remedy. But that prohibition as a remedy is not in every respect the exact converse of mandamus is made apparent by the words of the second clause of the same section, which declare that prohibition arrests *proceedings* which *are* without or in excess of the jurisdiction. In prohibition it must be shown to the Court that the inferior Court or person *has* exceeded the powers conferred by law, and the Court intervenes to prevent further proceedings without or in excess of such power. Mandamus may be resorted to whenever an officer or person refuses to perform a duty enjoined by law, although the act may have been an isolated one disconnected with any proceedings leading up to that which the recalcitrant official or individual refused to perform.

In what sense, then, is the word "counterpart" employed in the first clause of the section? As it cannot be given the meaning of the exact reverse or opposite without doing away with the limitation contained in the second clause, whereby prohibition is confined to the cases in which the Court, corporation, officer, or person has already exceeded the powers conferred by law, it must have been used in the more general sense, that prohibition is the opposite, in that it *arrests* while mandamus *commands* action.

The word "counterpart" as employed in the statute is designed to illustrate the operation of the writ of prohibition when issued in a proper case, but it is not intended to enlarge or add to the class of cases in which it may be resorted to.

Writ denied and petition dismissed.