■ In the Matter of PREMIER CONTAINER CORP., as Assignor. DAVID STRAUSS & CO., INC., et al., Appellants; ISIDOR E. LEINWAND et al., Respondents.—In a proceeding pursuant to article 2 of the Debtor and Creditor Law, the appeals are from an order of the Supreme Court, Queens County, dated September 15, 1978, which, *inter alia,* ordered appellant David Strauss & Co., Inc. to pay $700 to the assignee and ordered David Strauss & Co., Inc., Paul J. Hogue and Allied Paper & Tin Plate Converting Machinery Company, Inc., Doing Business as Patimco to pay $9,666.57 to the assignor's landlord for use and occupancy and granted judgment to the landlord in that amount. Order modified, on the law and on the facts, by deleting the second, third and fourth decretal paragraphs thereof. As so modified order

affirmed, without costs or disbursements, and the matter is remanded to Special Term for further proceedings in accordance herewith. On August 25, 1972, Premier Container Corp. (assignor), a user and owner of heavy machinery, executed an assignment for the benefit of creditors, with respondent Isidor E. Leinwand named as assignee. The assignee then hired appellant David Strauss & Co., Inc. (auctioneer) to conduct an auction sale of the machinery belonging to the assignor, which sale took place on September 13, 1972. The terms of the sale announced by the auctioneer included a requirement that the goods sold had to be removed, within 14 working days, from the property of the respondent landlord, Container Realty Corp. (landlord). The successful bidders, appellants Paul J. Hogue and Allied Paper & Tin Plate Converting Machinery Company, Inc., Doing Business as Patimco (purchasers) bought a substantial portion of the machinery for over $100,000. At the sale, the purchasers gave the auctioneer a deposit of $25,000 towards their purchase. The purchasers were not permitted to remove any of the machinery purchased until their bill had been paid in full. On October 2, 1972, the auctioneer, at the direction of the assignee's attorney, sent a letter to the purchasers requesting that they pay the balance of their bill and remove the items they purchased by October 6, 1972. The purchasers paid the balance of their bill on October 6, but did not complete the removal of their items until November 3, 1972, at which time the auctioneer surrendered the keys to the premises to the landlord's representative. Thereafter, the landlord moved in Supreme Court, Queens County, for an order directing the assignee to pay $14,333, as the balance due for reasonable use and occupancy of its premises by the assignor from August 25, 1972 through November 3, 1972. In cross-moving to dismiss the landlord's motion, the assignee further requested that, in the alternative, a determination be made holding the purchasers liable for any moneys due the landlord. The assignee took the position that his remaining in possession of the subject premises was caused by the failure of the purchasers to remove the items they purchased within 14 working days of the sale as provided in the terms of the sale. In opposition, purchaser Hogue submitted an affidavit in which he asserted that he was merely sent a copy of the motion papers presently before the court (actually the assignee's cross motion and affidavit), but was never served personally with a summons or complaint by the assignor debtor. It is not disputed that the purchasers were never served personally with a summons or complaint or petition and that Hogue raised the jurisdictional issue upon receipt of the motion papers. As to the auctioneer, although his firm was not a party to a Special Referee's hearing which was held, Mr. Justice Hyman, in disaffirming the Referee's report in a memorandum decision dated November 1, 1977, intimated that the auctioneer might be liable for any use and occupancy charges. An order then followed dated February 8, 1978 directing that further hearings be held before the court as to use and occupancy and that the parties-in-interest, including the auctioneer, appear to give testimony and evidence. After the hearing, Mr. Justice Hyman held, in the order under review, *inter alia,* that both the purchasers and the auctioneer were liable for the use and occupancy of the subject premises from October 6, 1972 to November 3, 1972, in the total sum of $9,666.57. We disagree with this determination as to the purchasers and the auctioneer.

#### APPELLANT PURCHASERS

We agree with the landlord's argument that under sections 15 and 20 of the Debtor and Creditor Law, the Supreme Court has broad powers to

obtain subject matter jurisdiction in a dispute involving a debtor's estate. Specifically the court has the power to direct the assignee for the benefit of creditors to bring an action against a purchaser on behalf of the assignor's estate whenever the purchaser has damaged the estate by, *inter alia,* breaching the terms of the sale. However, nowhere in such sections or anywhere else in the Debtor and Creditor Law is there any provision to the effect that one submits himself to the jurisdiction of the court merely by making a purchase at an assignee's sale. In this instance the purchasers were strangers to the administration of the estate and the order under review neither concerns the disposition of the property sold or the proceeds of sale. The landlord's cause of action does not constitute part of the debtor's estate but arose during its administration. The fact that the debtor's estate may have a bona fide cause of action against the purchasers sufficient to institute a third-party complaint against them, relieves neither it nor the assignee as its representative of the duty to effectuate proper service upon the purchasers as third-party defendants. A reading of subdivision 3 of section 15 of the Debtor and Creditor Law reveals that while the court is empowered thereunder to bring in new parties in a proceeding, it also specifically provides that such be effectuated by the issuance of a citation and the service of such a document "as ordered by the court." Since such procedure was not followed in this instance as to the purchasers and they made timely objection, we conclude that personal jurisdiction was never obtained over them and the money judgment must be vacated as to them. *Matter of Sheldon* (173 NY 287), cited by Special Term to support its position that it had the requisite jurisdiction to hold the purchasers liable for money damages for use and occupancy of the landlord's premises, is not in point. In *Sheldon,* the purchaser was a son of the assignee, worked for the latter, and, contrary to the status of the purchasers in this case, bore some fiduciary relationship to the debtor's estate and its administration. Moreover, the County Court's order in *Sheldon,* unlike in the case at bar, pertained to the disposition of the property in the debtor's estate which was consequently, *in custodia legis.*

### APPELLANT AUCTIONEER

The conclusion of Special Term that the auctioneer was liable for losses to the debtor's estate for the purchasers' failure to remove the machinery sold to them, appears to be based on the premise that the auctioneer improperly, and without authority from the assignee, allowed the purchasers to occupy the premises beyond the October 6 deadline. We also disagree with this determination. In our opinion no evidence was adduced that the auctioneer entered into an agreement with the purchasers which expressly or impliedly permitted them to remain after October 6 without penalty. In fact the assignee testified that he was aware of the difficulties encountered in having the purchasers pay for and remove the items they bought at the auction. Furthermore, the assignee's attorney testified that the auctioneer notified him of the problem in September, 1972; and when he checked with the auctioneer in the middle of October, the latter told him the problem still existed. When the attorney then directed the auctioneer to inform purchaser Hogue that he would be held responsible for any expenses caused by the delay in moving, the auctioneer did as he was directed. The law is settled that whereas an auctioneer is a special agent of the debtor's estate with very limited powers, the powers of the assignee are broad and encompassing (see Debtor and Creditor Law, § 14). It is the assignee who marshalls the debtor's assets and reduces them to cash and who retains the auctioneer

(cf. *Matter of Arutt v Multer*, 42 AD2d 366). Although, concededly, the auctioneer who conducts the assignee's sale is subject to the court's summary jurisdiction for his actions vis-à-vis the debtor's estate *(Matter of Creveling & Son Corp. [Elkins]*, 259 App Div 351), it is the assignee who is ultimately responsible for the proper administration of such estate. In sum we believe that the assignee's attorney's instruction to the auctioneer that the latter tell purchaser Hogue that he would be accountable for use and occupancy after October 6, was tantamount to a decision by the assignee that possession of the premises would not be given to the landlord until the machinery was removed from there by Hogue. It follows therefore that the auctioneer is entitled to whatever fee it received for placing someone on the premises to supervise removal after the October 6 deadline. Accordingly, the matter is remanded to Special Term to determine the extent of the assignee's liability with respect to the use and occupancy of the subject premises. Damiani, J. P., Titone, Cohalan and O'Connor, JJ., concur.